MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:     2018 ME 15
Docket:       Pen-17-222
Argued:       December 14, 2017
Decided:      January 25, 2018
Revised:      February 1, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DOUGLAS ANNIS

MEAD, J.

[¶1]  Douglas Annis appeals from a judgment of conviction for possession of sexually explicit materials depicting a minor under twelve years old (Class C), 17-A M.R.S. § 284(1)(C) (2017), entered following his conditional guilty plea.  He challenges the order of the motion court (Penobscot County, *Campbell, J.)* denying his motion to suppress his statements to the police.  Annis also directly appeals the condition of his probation that permits him only supervised contact with his infant son; he argues this condition is illegal and violates his rights as a parent.  We conclude, based on the court's findings that are supported by the record, that Annis's confession was the product of a free choice of his rational mind, was not caused by the investigator's vague and generalized remark that Annis claims was an improper inducement, and that

given the totality of the circumstances, its admission was fundamentally fair. Furthermore, the "no unsupervised contact" provision of Annis's probation was well within the authority of the court pursuant to 17-A M.R.S. § 1204(2-A) (2017) and did not violate his constitutional rights. We affirm.

## I. BACKGROUND

[¶2] During the week of July 20, 2014, Annis lost his cell phone while he and his family were at their camp in Township 33. Annis's cell phone was found by an acquaintance who discovered that the phone contained pornographic images depicting children and reported this fact to the police. On August 6, 2014, six local law enforcement officers, in marked and unmarked vehicles, from the Hampden Police Department and the Penobscot County Sheriff's Office executed a search warrant at the Annis residence for "computers and electronic devices" potentially storing child pornography. The police arrived at approximately 6:00 p.m. as Annis and his parents, with whom he lives, were sitting down for dinner; the family cooperated fully with the search. Annis was twenty-two years old at the time.

[¶3] Two investigators asked to speak with Annis, who was the target of the investigation, outside the residence in an unmarked police cruiser parked in the home's driveway. Annis agreed, and engaged in an interview with one

3

and sometimes both of the investigators for approximately an hour and seven minutes. Their conversation was recorded and entered into evidence at the hearing on the motion to suppress. The court found the following facts concerning the investigators' conversation with Annis.

[¶4] The lead investigator sat in the driver's seat, next to Annis who was seated in the front passenger seat. The assisting investigator occupied the back seat, directly behind Annis. At the outset and at two other occasions during the interview, Annis asked whether he was under arrest and an investigator repeatedly assured him that he was not. Although no *Miranda* warnings were read, the lead investigator explained to Annis that he could end the interview at any point and that he did not have to speak with them. Annis, paraphrasing the investigator's explanations, stated his understanding that "I can stop talking at any point." Annis was never restrained in any way during the interview and the doors of the cruiser were unlocked. The investigators and Annis also left the car for a smoke break. The court concluded that the interview was non-custodial in nature as it was, overall, a non-threatening, low-key, and cordial exchange.

[¶5] From the beginning of the interview, Annis freely acknowledged that he knew that the investigators were speaking to him because someone had

found his cell phone and reported to the police that it contained pornographic images of children. Annis informed the investigators that the witness had attempted to extort money from him and his parents in exchange for the witness's silence and agreement not to turn the phone over to the police. Annis further volunteered that his heart was pounding due to his nicotine addiction and that he had "ADHD really bad." At approximately seventeen minutes into the interview, after some inconsequential conversation about how Annis and the lead investigator knew each other from having spoken to one another around town, the investigator told Annis that the police knew that Annis put the child pornography onto his phone. Although Annis's responses were vague and equivocal, he did not deny or refute the statement, instead claiming that he did not remember downloading the content onto his phone.

[¶6] Approximately twenty minutes into the interview, the lead investigator turned the focus of his questions to addressing child pornography as an addiction:

> [Investigator:] . . . Just saying that no it didn't happen—people are going to think . . . that this guy is not willing to take responsibility for his addiction. So, what is he going to do? First thing we want is for people to take responsibility and say that "Yes, I have a problem."

> [Annis:] I can honestly say that I have seen it before because it has been sent to me before and I have deleted it, instantly.

[Investigator:] Ok.

[Annis:] I open the message up and see what it is and then I delete it.

. . . .

[Investigator:] Well, people are sending you this stuff and we also know that stuff was sent from you. . . . Has that happened before?

. . . .

[Annis:] Yes, when I was a lot younger. I used to have a problem when I was a lot younger.

[Investigator:] Sure.  And sometimes it doesn't go away without help.  Sometimes, we all need help . . . . I can tell you that I have needed help with stuff that I couldn't deal with on my own.

[Annis:] I don't want this to follow me around for my whole life and screw me.

[Investigator:] You know, all I can tell you is that it is going to be one hundred times worse if, you know, all you hear is denial, and people look at this and say that this person is not willing to take responsibility, he is a danger.

[Annis:] But I have just told you that I have had problems in the past.  I just don't need this following me around for the rest of my life.

[Investigator:] I understand that but we are already here at this point.  Now we have to look at getting beyond this.

[Annis:] Is it going to follow me for the rest of my life?

[Investigator:] I can't answer that, we are already here, we have got your phone, we have dates, we have chat stuff, we know pictures have been sent. [W]e already know all this. . . . And what is going to come out of this is going to come out of this. . . . Would you be willing to see somebody to get help for it?

[Annis:] I would be willing to talk to somebody.

. . . .

[Investigator:] Ok, when was the last time that you did it?

[Annis:] I honestly—I am trying to tell you the truth here—I honestly do not remember.

(Repeated "you knows" omitted.)

[¶7] Annis then reaffirmed that his problem was entirely in his past and he speculated that he could have downloaded the content while he was in "a drunken stupor," but assured the investigator that he "would never hurt a child." Annis subsequently asked if he was under arrest, and the investigator again told him no, he was not.

[¶8] Approximately halfway into the interview, Annis's father approached the car where the interview was taking place to check on his son and to let the investigators know that Annis had a mental illness. Both the investigator and Annis assured the father that Annis was fine and, at this point, Annis informed the investigators that he had a mental illness and heart problems. After another ten minutes of questions, Annis expressed his desire

to take a smoke break. He and the investigators walked to the end of the driveway where Annis smoked a cigar and spoke about matters unrelated to the investigation before returning to the car.

[¶9]   During the remainder of the interview, Annis continued to vehemently deny having perpetrated any acts of child sexual abuse. However, he made further incriminating statements regarding his possession of child pornography. He acknowledged that he was responsible for all the images on his phone, had developed an interest in child pornography, downloaded the materials in his bedroom when his parents were not around, and expressed uncertainty about whether his computer contained more images. At the end of the interview, the investigator thanked Annis and Annis returned home.

[¶10]  On January 27, 2016, a grand jury indictment charged Annis with possession of sexually explicit materials depicting a minor under twelve years of age, 17-A M.R.S. § 284(1)(C). Annis entered a plea of not guilty and later filed a motion to suppress all his statements after the investigator's "one hundred times worse" remark on the grounds that these statements were involuntary and induced by an improper promise of leniency. Following a hearing, the court denied the motion, finding that the investigator's "one hundred times worse" remark "did not rise to the level of a promise of leniency or a threat that caused

the Defendant's will to be overborne."  The court acknowledged that Annis and his father claimed that he had a mental illness but ultimately found that "[t]here was no evidence . . . that if the Defendant did in fact have any mental health issues, they played any role in the Defendant speaking with the officers."

[¶11]  On April 7, 2017, Annis tendered a conditional guilty plea pursuant to M.R.U. Crim. P. 11(a)(2), and the court entered a judgment of conviction accordingly.  At sentencing, the court heard testimony from Annis's psychiatrists as to his diagnoses and the limiting effects that his autism, major depressive disorder, ADHD, and anxiety had on his cognitive abilities and moral judgment.  The court imposed a sentence of three years' incarceration, with all but seven months suspended, and two years of probation with the same conditions as those imposed on Annis's bail, including the restriction against unsupervised contact with children under the age of sixteen years.  Annis appealed.

## II.  DISCUSSION

[¶12]  Annis renews his argument from his motion to suppress that the investigator's "one hundred times worse" remark was an improper false promise of leniency that caused Annis to confess against his will; he argues that the court should have suppressed all his statements after this remark as

involuntary. Me. Const. art. I, § 6-A. He offers on appeal an additional ground for suppression: his alleged cognitive limitations and mental health issues.[1] "We review 'the court's factual findings for clear error and its ultimate determination regarding voluntariness' de novo." *State v. Hunt,* 2016 ME 172, ¶ 16, 151 A.3d 911 (modifications omitted) (quoting *State v. Bryant,* 2014 ME 94, ¶ 15, 97 A.3d 595).

A.     Voluntariness of the Confession

[¶13]  We recently clarified in *Hunt* the law regarding the voluntariness of a confession when there are no allegations that "a confession was 'forced' out of [the defendant]." *See id.* ¶¶ 17-19 (explaining that absent an argument that a confession was "forced" out of the defendant, our review of its voluntariness is pursuant to the right to due process). Pursuant to article I, section 6-A of the Maine Constitution, a confession must be voluntary to be admissible, and we have said that "a confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of

---

[1]  Annis proposes that we should recast our voluntariness jurisprudence to provide that statements made by persons with cognitive limitations who were subjected to arguably manipulative police interview techniques be presumptively deemed involuntary. Because this argument was not raised before the suppression court, we do not address it. *See* M.R.U. Crim. P. 11(a)(2); *State v. Buchanan,* 2007 ME 58, ¶ 11, 921 A.2d 159.

the circumstances its admission would be fundamentally fair."[2]  *Id.* ¶ 21 (quotation marks omitted); *State v. Kittredge*, 2014 ME 90, ¶ 25, 97 A.3d 106. The State bears the burden to prove that a confession was voluntary beyond a reasonable doubt—a more protective standard of proof than the federal counterpart of a preponderance of the evidence.  *See Kittredge*, 2014 ME 90, ¶ 24, 97 A.3d 106; *State v. Collins*, 297 A.2d 620, 626-27 (1972) (citing *Lego v. Twomey,* 404 U.S. 477, 482-91 (1972)).

[¶14]  In *Hunt*, we revisited several of our cases concerning improper threats or false promises of leniency and reiterated that neither a law enforcement officer's "generalized and vague suggestions that telling the truth will be helpful to a defendant in the long run, nor mere admonitions or exhortations to tell the truth, will factor significantly into the totality of the circumstances analysis."  2016 ME 172, ¶ 23, 151 A.3d 911 (citations omitted) (quotation marks omitted).  In numerous cases, we have discerned no impropriety in law enforcement officers' vague and generalized representations during a police interview, including offers to "get the defendant

---

[2] Factors germane to this totality of the circumstances analysis include the police interview's "details . . . duration . . . location . . . [and] custodial [nature]; . . . the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct." *State v. Hunt,* 2016 ME 172, ¶ 22, 151 A.3d 911 (quoting *State v. George*, 2012 ME 64, ¶ 21, 52 A.3d 903).

help if he confessed," or assurances that cooperation would make things better for the defendant, or that a confession would look better. *Id.* ¶ 24 (quoting *State v. Gould*, 2012 ME 60, ¶¶ 11-13, 43 A.3d 952); *see State v. Lavoie*, 2010 ME 76, ¶¶ 21, 24, 1 A.3d 408; *State v. Nadeau*, 2010 ME 71, ¶¶ 57-58, 1 A.3d 445; *State v. Dion*, 2007 ME 87, ¶¶ 34-35, 928 A.2d 746.

[¶15] The investigator's remark that it would make the situation one hundred times worse "if . . . all you hear is denial, and people look at this and say that this person is not willing to take responsibility, he is a danger" is the sort of vague and generalized statement that we have held falls short of an impermissible threat or promise of leniency. *See Hunt*, 2016 ME 172, ¶ 24, 151 A.3d 911 (collecting cases); *cf. State v. Tardiff,* 374 A.2d 598, 601 (Me. 1977) (deeming it an impermissible false promise to tell defendant he would only be charged with one of three burglaries if he confessed to all three). Annis was told that it would be worse if he continued to deny responsibility for the child pornography because the investigators already knew—as Annis admitted he knew—that he had such materials on his phone based on the initial forensic analysis of his cell phone. The court's observation that before and after the investigator's one-hundred-times worse remark Annis's demeanor and responses "continued along the same lines" has support in competent evidence

in the record and further suggests that the remark did not overbear his will. *See Hunt*, 2016 ME 172, ¶ 35, 151 A.3d 911 ("[T]he degree to which police conduct appears to have motivated the defendant's decision to confess is one of the factors to be considered . . . in determining . . . whether that conduct constituted an improper inducement. . . ."); *cf. Tardiff,* 374 A.2d at 601.  Both before and after this remark, Annis responded to the inquiries by admitting that he had viewed child pornography in the past, but he calmly, affirmatively, and consistently denied that he currently had a problem or that he had perpetrated any sexual abuse of a child.

[¶16]  Annis's reliance on our holding in *Hunt* is misplaced.  In *Hunt*, we concluded that a false promise that the defendant would not be listed as a sex offender if convicted of gross sexual assault induced the confession and, in light of the defendant's cognitive limitations, rendered his confession involuntary. 2016 ME 172, ¶¶ 42-43, 151 A.3d 911.  The record in *Hunt* contained the results of two psychologists' evaluations indicating that the defendant had "less than average cognitive skills" in addition to the unequivocal misrepresentation that the defendant would not appear on any sex offender registry in the event that he was to be convicted. *Id.* ¶¶ 10, 41-42.  The suppression record here is devoid of any testimony concerning how Annis's claimed psychiatric disorders may

have affected his ability to voluntarily speak with the investigators on August 6, 2014.[3] Also in stark contrast to Annis's case, Hunt explained to police that he had confessed because of their assurance that he would not have to register as a sex offender. *See id.* ¶ 42. We discern no error in the suppression court's determination that the State proved beyond a reasonable doubt that Annis confessed voluntarily because "[t]here was no evidence . . . that if the Defendant did in fact have any mental health issues, they played any role in the Defendant speaking with the officers."

B.     Conditions of Probation

[¶17]    Annis also directly appeals the condition of his probation preventing him from having unsupervised contact with any minor child under sixteen years of age, including his infant son. Where there is no preserved challenge to a condition of probation, we review the condition for obvious errors affecting substantial rights and to ensure that the court did not exceed its authority. *See* M.R.U. Crim. P. 52(b); *State v. Hodgkins*, 2003 ME 57, ¶¶ 7-8, 822 A.2d 1187. The constitutional magnitude of Annis's fundamental right as a

---

[3] At the sentencing hearing, Annis presented, for the first time, expert evidence of his mental health diagnoses in the form of letters from his psychiatrists. At the motion hearing, the only suggestion of his mental health or cognitive issues were statements by Annis, his father, and defense counsel. Our review, which is limited to the record before the suppression court at the time of its order, does not consider the information presented at sentencing. *See* M.R. App. P. 5 (Tower 2016); Alexander, *Appellate Practice* § 429 at 296-97 (4th ed. 2013).

parent "to direct the care, custody and control of [his child]" is unquestioned, and the condition of his probation infringing on that right must be the least restrictive necessary to advance a compelling government interest. *State v. Collins*, 2015 ME 52, ¶ 16, 115 A.3d 604 (quotation marks omitted).

[¶18]  We have held that "conditions of probation affecting an offender's rights of contact with his child who is the victim of the offender's violent conduct" do indeed meet strict scrutiny. *Id.* ¶¶ 19-20 (affirming increased restriction prohibiting even supervised contact between defendant and son). Pursuant to 17-A M.R.S. § 1204(2-A)(F), (M), the sentencing court had the authority to prohibit Annis from "consorting with specified persons" and to impose "other conditions reasonably related to rehabilitation . . . or the public safety."

[¶19]  At the time the court imposed its sentence, it appears that Annis's son was fifteen months old.  Noting that one of the children depicted in the pornographic images was approximately three or four years old and that one of Annis's psychiatrists presented information that he has a "lack of ability to form moral judgment," the court imposed a limitation on Annis's contact with minors under the age of sixteen.  That limitation is not illegal; it is narrowly tailored to further the State's compelling interests in protecting children,

including Annis's child, from abuse. *See State v. King*, 1997 ME 85, ¶ 7, 692 A.2d 1384; *State v. Coreau*, 651 A.2d 319, 321 (Me. 1994) (condition of probation prohibiting "unsupervised contact with [offender's] own children bears a sufficient relationship to the crimes for which he has been convicted, reduces the risk of further criminality, and is a protection for the children."). Annis's conditions of probation were well within the court's lawful authority pursuant to section 1204(2-A).

The entry is:

Judgment affirmed.

---

Jamesa J. Drake, Esq. (orally), Drake Law, LLC, Auburn, for appellant Douglas Annis

R. Christopher Almy, District Attorney, and Mark A. Rucci, Esq., Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2016-396
For Clerk Reference Only