STATE OF MAINE                    UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss                    DOCKET NO CR-22-4653


STATE OF MAINE              )
                            )      ORDER ON DEFENDANT'S
v.                          )      MOTION TO SUPRESS
                            )
LUKE HOLDEN                 )


     This matter came before the court on October 12, 2023 for hearing on Defendant's motion to suppress. Defendant was present and was represented by attorney Nathaniel Hitchcock, Esquire. The State was represented by student attorney Remy Segovia along with supervising attorney, Assistant District Attorney Joshua Avery Youngblood.

     Defendant challenges whether or not his statements made to Detective Cole Chandler on October 17, 2022 were obtained in violation of Defendant's state and federal constitutional rights. Specifically, Defendant challenges whether any statements made were voluntary, asserting that the statements were not made with free choice of a rational mind. The court heard testimony from Detective Cole Chandler from the Cumberland County Sheriff's Office as well as the Defendant, Luke Holden. The court also admitted in evidence Exhibit 1, an audio recording of the interview between law enforcement and Defendant.

     After hearing the court left the evidence open to review Exhibit 1 in its entirety. Having now considered all the evidence, arguments presented, and after listening to the full recorded interview, the court makes the following Findings of Fact and Conclusions of Law upon which the Order set forth below is based.

     Cole Chandler has been employed by the Cumberland County Sheriff's Department for approximately ten years. Chandler has law enforcement training and experience related to substance use including alcohol use. At the time of this investigation, Chandler was a detective for the Sheriff's Department.

     Detective Chandler received a referral from the Department of Health and Human Service (DHHS) involving, in part, an alleged domestic violence assault involving Defendant, Luke Holden. The detective began his investigation by speaking with the assigned DHHS caseworker, Defendant's wife, and Defendant's six-year-old son.

1

On October 17, 2022, Detective Chandler went to Defendant's residence to speak with him about the allegations. The detective was not in uniform and arrived at Defendant's residence in an unmarked black Chevy Tahoe. The interview took place outside in the driveway of the Defendant's home, approximately ten to fifteen feet from the main entry area of the residence. Detective Chandler was alone when he spoke with Defendant and he was dressed in plain clothes attire. Detective Chandler recalled that he was armed with his service issue firearm, but he was unsure whether the weapon was visible on his person or concealed from sight during his interaction with Defendant. Although not specifically addressed in the testimony, the court finds, based on a review of the interview admitted as State's Exhibit 1 and the testimony of both Detective Chandler and Defendant that Defendant was not handcuffed, that Defendant was not physically restrained, his movements were not restricted, and he was not in custody during the conversation.

After knocking on the door, the detective identified himself to Defendant as "Detective Chandler from the Sheriff's Office," and asked if they could "talk for a minute." When Detective Chandler first arrived at the residence, Defendant's dogs were barking loudly, and no substantive conversation took place after that introduction. After a few seconds of loud distraction by the dogs, Defendant offered to "do something to secure" the dogs inside the house, and he left the front door area with the dogs. After approximately eighty-five seconds, Defendant returned and the two began to speak.

Detective Chandler jumped into the conversation by asking Defendant if he had spoken to someone from DHHS. Defendant answered by outlining his contact with the DHHS caseworker. During this part of the conversation, Defendant demonstrated an understanding of the investigation. He also offered that he had notice of a certified letter from DHHS, but that he had not yet been able to retrieve the letter from the post office as it was closed when he went to get it. Detective Chandler informed Defendant that he had spoken to the case worker, Defendant's wife, and son, and that he was there to get Defendant's "side of things." At all times throughout the conversation, Detective Chandler's demeanor was calm, respectful, and professional. The interview's tone was nonconfrontational throughout.

Detective Chandler and Defendant interacted for approximately nineteen minutes, during which time Detective Chandler did not smell any odor of alcohol or note any slurred speech. Based on his observations, Detective Chandler did not believe that Defendant was intoxicated. To the contrary, Detective Chandler found Defendant's demeanor be conversational with his answers responsive and

forthcoming to the questions and topics discussed. The court finds that Defendant's answers were responsive to the questions asked of him, and he volunteered detailed information in a calm, clear and communicative manner. He recalled dates and names of people he spoke to about the allegations. The conversation also suggests that Defendant aware that this discussion was separate and distinct from any DHHS investigation.

Defendant testified about his long battle with alcohol addiction and his daily alcohol consumption of four to five high alcohol beers and a few shots of liquor. Defendant had also been charged with OUI with an excessively high test two months prior to the interview. He suggested that he usually began drinking after he got out of work as a sales associate at Lowe's. However, when asked if he had begun drinking the day that the detective came to his house to speak with him, Defendant said he could not recall. Defendant also asserted that he did not understand that he was speaking to a law enforcement detective, and that he only vaguely recalled the conversation. This is contrary to the exchange between himself and Detective Chandler based on the court's review of Exhibit 1.

Defendant has challenged the admissibility of the statements made to Detective Chandler both under state and federal constitutional protections. Under the protections of the Maine Constitution, the "State bears the burden to prove that a confession was voluntary beyond a reasonable doubt – a more protective standard of proof than the federal counterpart of a preponderance of the evidence." *State v. Annis*, 2018 ME 15, ¶ 13, 178 A.3d 467 (citations omitted). Under Maine law, a "confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *Id.* (citations and internal quotations omitted). *See also State v. Seamon,* 2017 ME 123, ¶ 18, 165 A.3d 342.

"The voluntariness requirement encompasses 'three overlapping but conceptually distinct values: (1) it discourages objectionable police practices; (2) it protects the mental freedom of the individual; and (3) it preserves a quality of fundamental fairness in the criminal justice system.'" *Id.* (quoting *State v. Wiley*, 2013 ME 30, ¶ 16, 61 A.3d 750). In order to determine the voluntariness of a confession, the court looks "at the totality of the circumstances, including the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct." *State v. Athayde*, 2022 ME 41, ¶ 30, 277 A.3d 387

3

(quoting *State v. Akers*, 2021 ME 43, ¶ 47. 259 A.3d 127 (quotation marks omitted).

The court finds that Defendant is of reasonable intelligence. The officer, who was alone and dressed in plain clothes, identified who he was, where he was from, and what he was there to speak with Defendant about. Defendant offered clear and responsive answers to the questions of the officer. Defendant was able to carry on a conversation with the detective and gave appropriate explanations to questions and statements throughout. The interrogation took place within ten to fifteen- feet from Defendant's front door, in his driveway, and lasted approximately nineteen minutes. Although the detective did not inform Defendant of his rights pursuant to *Miranda v. Arizona*, 348 U.S. 436 (1966), and its progeny, Defendant was not in custody when Detective Chandler spoke with him. The tone of the interview was relaxed, conversational and professional at all times. The detective did not use any form of trickery, threats, promises or inducements to persuade Defendant to talk to him. At no point during the interview did Defendant ask or attempt to stop the interview. The court finds that Defendant's answers and statements to Detective Chandler were the product of the free choice of a rational mind. The court finds that the State has proven beyond a reasonable doubt that the statements made by Defendant to Detective Chandler were voluntary and a product of his exercise of free will and with a rational intellect.

Turning now to the question of the federal constitutional protections, the court looks to whether the statements were involuntary under the Fifth Amendment and Due Process Clause of the U.S. Constitution. "A federal constitutional analysis of voluntariness focuses on the presence of police misconduct and not on individual characteristics or circumstances that can undermine voluntariness." *Athayde*, 2022 ME 41, ¶ 39, 277 A.3d 387 (citing *Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986)). For the reasons stated above, the court finds no misconduct by Detective Chandler violative of Defendant's federal constitutional rights.

Based on the evidence presented in the suppression hearing, as well as the arguments of counsel, Defendant's Motion to Suppress is DENIED.

Dated: January 11, 2024

Deborah P. Cashman, Justice
Unified Criminal Docket

4