7/23/21

STATE OF MAINE
CUMBERLAND, SS.

UNIFIED CRIMINAL COURT
PORTLAND
DOCKET NO. CR-2019-1296

MCRISC # 283-21

STATE OF MAINE

V.

**ORDER ON MOTION TO SUPPRESS**

WILLIAM ROSCOE, JR.

REC'D CUMB CLERKS OF
JUL 27 '21 AM 9:37

## INTRODUCTION

Before the court for resolution is the Defendant's Motion to Suppress Statements dated March 25, 2019. Specifically, William Roscoe, Jr. (Roscoe) seeks to exclude from evidence inculpatory statements he made to his federal probation officer on June 25, 2018 and in a subsequent interview with a Portland Police detective on January 5, 2019, on the ground that they were not voluntary.

An evidentiary hearing on the motion was started on January 28, 2020 with the presentation of testimony from U.S. Probation Officer Michael Barker. That hearing did not conclude on that day, however, and was scheduled to resume on March 13, 2020. That hearing was cancelled due to the COVID-19 pandemic. The hearing was rescheduled for July 6, 2020, but was continued at the request of counsel for the Defendant, and without objection from the State, because the Defendant could not be transported to the courthouse from the Cumberland County jail, again due to COVID-19 public health concerns. The court held a status conference with counsel on January 7, 2021. *See Procedural Order dated January 7, 2021.*

Ultimately, the evidentiary hearing resumed on April 1, 2021, at which time the court received additional testimony from Officer Barker and the testimony of Detective Kelly Gorham. The court also admitted into evidence, without objection.,

State's Exhibits 1-3, being respectively: (1) Judgment in the matter of *United States v. William Alfred Roscoe*, Case No. 2-15-CR-00100-001 dated February 5, 2016; (2) Miranda Warning and Waiver dated January 5, 2019, and; (3) Video disc of interview with Mr. Roscoe by Det. Gorham on January 5, 2019 at the Cumberland County Jail. Briefing in this matter was completed on June 11, 2021.

Based on the evidence presented at the hearing, the court makes the following findings of fact.

## FINDINGS OF FACT

On February 5, 2016, sentence was imposed upon Mr. Roscoe in the United States District Court for the District of Maine on a single count of Possession of Child Pornography. Upon his guilty plea, Mr. Roscoe received a sentence of 40 months to be followed by a period of supervised release of 5 years. Among the conditions of Mr. Roscoe's supervision was standard condition # 3, which states: "the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." In addition, Mr. Roscoe was subject to certain special conditions of supervised release, including special condition # 2, which states:

> Defendant shall submit to periodic random polygraph examinations as directed by the probation officer to assist in treatment and/or case planning related to behaviors potentially associated with sex offense conduct. No violation proceedings will arise solely on the defendant[ ] failure to pass a polygraph examination, or on the defendant[ ] refusal to answer polygraph questions based on 5th amendment grounds. Such an event could, however, generate a separate investigation. Defendant shall pay/co-pay for such services to the supervising officer[ ] satisfaction.

This condition works in conjunction with special condition # 1that required Mr. Roscoe to "fully participate in sex offender treatment as directed by the supervising officer."

2

Roscoe served approximately 34 months of his initial 40-month sentence and was released from the custody of the Bureau of Prisons in May of 2018. Officer Barker, a sex offender specialist, was assigned as Roscoe's supervising officer, and held an "intake" meeting with him on May 23, 2018 at Roscoe's apartment in Portland. At that "intake" meeting, Officer Barker discussed with Roscoe both the standard and special conditions of his supervised release, and specifically discussed with him his 5th amendment right not to answer questions put to him, either by Barker or by a polygraph examiner, that would incriminate him. He also emphasized to Roscoe that if there were any "hands-on" victims of his, Roscoe should not identify them by name, but should use some other way to describe them, such as by letter, initial or number. Officer Barker testified that "one of the standard conditions they have is that they are required to be truthful within the inquiries that we request of them, but that does not extend to anything that could be potentially incriminating. And I would not be asking him any questions that would entail him invoking his Fifth Amendment rights." (April 1, 2021 Transcript at 12). "Specifically, I told him he'll learn more about Fifth Amendment and his right to remain silent during the polygraph, because they go over that. I made the parallels between what the truthful condition means on my end that he has to remain truthful with me. However, he does not have to admit anything that would be potentially incriminating, even if I direct him to answer those questions." (Id at 54-55).

Following the intake meeting on May 23, 2018, Roscoe was scheduled for a psycho-sexual evaluation and then his first polygraph examination on June 18, 2018. According to Officer Barker, it is standard practice that the polygraph examiner would review with the subject (in this case Mr. Roscoe), his 5th amendment rights not to incriminate himself and not identify victims by name.

Within several days after the polygraph examination of Mr. Roscoe, Officer Barker received a copy of the polygraph report, from which he learned that Roscoe

3

had "passed" the exam but had made admissions that he had some type of sexual contact with minors, identified as victim "L" and victim "M." Although Officer Barker did not know the names of these victims, the court finds that he suspected that victim "M" was McKenzie. At the outset of Roscoe's supervised release, he had requested permission to have contact with the children of his former girlfriend, one of whom was named McKenzie. That request was denied. Moreover, Officer Barker was monitoring Roscoe's cell phone and was aware that Roscoe had been in contact with McKenzie's mother and that the phone contained photos of McKenzie herself.

After receiving the polygraph report, Officer Barker held a so-called "containment" meeting with Roscoe on June 25, 2018. This meeting also took place at Roscoe's apartment and was quite brief, lasting less than 30 minutes. Officer Barker testified that he thought the meeting may have lasted as little as 15 minutes. It was not recorded. Officer Barker described Roscoe as being anxious and sad at the meeting, and concerned that he would be going to jail because of what he had admitted during the polygraph examination. While not hyper-ventilating, Roscoe was breathing heavily and Barker had some concern for his well-being because sex offenders have a high risk of suicide. Officer Barker asked Roscoe directly if victim "M" was McKenzie and Roscoe confirmed that she was and, upon further questioning, acknowledged and described that he had had sexual contact with her for a period of about 2 ½ years while she was between the ages of 9 and 11. Officer Barker did not say anything to Roscoe about his 5th amendment right not to answer incriminating questions that he had discussed previously with him during the May 23, 2018 intake meeting.

Officer Barker is not a mandated reporter and did not immediately make a referral to the Maine Department of Health and Human Services. Moreover, conduct that pre-dated Roscoe's period of supervised release could not form the basis for a

4

petition to revoke his release. For that reason, Officer Barker's focus in his "containment" meeting with Roscoe of June 25, 2018 was on whether Roscoe was having prohibited contact with a minor, particularly a "hands-on" victim.

Officer Barker did not arrest or threaten to arrest Roscoe at that time, and although Roscoe was concerned about going to jail, Barker told him that they would "take things one step at a time," but he made it clear to Roscoe that he was to have no further contact with McKenzie or any other minor, except his son. By the end of the meeting, Officer Barker felt that Mr. Roscoe was somewhat less anxious.

As a federal probation officer, Barker had considerable discretion in deciding whether to seek a petition to revoke Roscoe's supervised release and whether to seek permission to make a referral to DHHS. A decision to do either of those things also required the approval of the federal court. Ultimately, in the late Fall of 2018, or perhaps the early Winter of that year, Officer Barker was authorized to file a petition to revoke Roscoe's supervised release and to make a referral to DHHS of the disclosures Roscoe had made to him.

On January 2, 2019, Det. Kelly Gorham received the referral from the Biddeford office of DHHS and contacted Officer Barker the next day. A Child Advocacy Center (CAC) interview of McKenzie was also set up, which Det. Gorham attended. McKenzie made no disclosures or allegations against Roscoe during that first CAC interview. Det. Gorham learned from Officer Barker that Roscoe had been arrested on January 3, 2019. The petition to revoke was based on allegations that he continued to have prohibited contact with minors, [1] possession of an unapproved device and substance use. On January 4, 2019, Officer Barker gave a

---

[1] It remains unclear to the court, based on its review of the hearing transcripts, whether Roscoe was revoked, in part, because he continued to have contact with McKenzie while he was on supervised release, but it is the court's understanding that such was, in fact, the case.

written statement to Det. Gorham in which he detailed the admissions Roscoe had made to him on June 25, 2018. On the following day, January 5, 2019, Det. Gorham went to the Cumberland County Jail to attempt to interview Roscoe. By this time, Roscoe had already made his initial appearance in federal court on the petition to revoke his supervised release and he was represented by counsel at that court event. Det. Gorham did not attempt to reach out to Roscoe's federal attorney and believed she had no obligation to do so with respect to her investigation of possible state law offenses.

Det. Gorham met with Roscoe at the jail and recorded the interview on video. *See State's Exhibit 3.* She advised Roscoe of his *Miranda* warnings and asked if he was willing to answer her questions. He said: "sure," and signed a written waiver. *State's Exhibit 2.* Det. Gorham accurately told Roscoe that she had spoken to Officer Barker, who told her about Roscoe's earlier disclosures/admissions to him, but she falsely stated that McKenzie had corroborated those disclosures when, in fact, she had not done so during her first CAC interview.

The interview lasted a little over 20 minutes. Roscoe confirmed that he had engaged in sexual acts and contact with McKenzie while he lived in her household and while she was between the ages of 9 to 11, and that this conduct took place over a 2 ½ year period. Essentially, he told Det. Gorham what he had previously told Officer Barker. He also admitted that he had had sexual contact on one occasion with victim "L." Roscoe disclosed to Det. Gorham that he had a brain tumor removed in 2008 and that he believed it had affected his "impulse control." Roscoe was clearly concerned that his statements/admissions would subject him to a lengthy prison sentence. In viewing the video interview, the court found that Mr. Roscoe was lucid and forthcoming and understood the *Miranda* warnings given to him by Det. Gorham and further understood the seriousness of the conduct to which he was

6

admitting and the potential consequences that could result. He also expressed remorse for what he had done.

On March 7, 2019, Mr. Roscoe was indicted by the Cumberland County Grand Jury on 3 counts of Gross Sexual Assault (Class A) and 2 counts of Unlawful Sexual Contact (Class B), presumably committed against McKenzie. He was also indicted on 1 count of Unlawful Sexual Touching (Class D), presumably committed against victim "L."

## DISCUSSION

Roscoe has made it clear that his challenge to the admissibility of his statements to P.O. Barker on June 25, 2018 and Det. Gorham on January 5, 2019, is on the basis that they were not voluntary in accordance with due process as articulated by the Law Court in *State v. Hunt*, 2016 ME 172, 151 A.3d 911.

In *Hunt*, the Court clarified the "distinction between those statements that must be excluded pursuant to the Fifth Amendment because they are the product of compulsion, and those statements that must be excluded because their admission would otherwise create an injustice." The latter situation employs a due process analysis and seeks to address the question of whether a defendant's "statements were free and voluntary or whether, considering the totality of the circumstances under which the statements were made, their admission would be fundamentally unfair." *Id.* The Court reaffirmed its holding in *State v. Mikulewicz*, 462 A.2d 497, 500-01 (Me. 1983) that "[a] confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *See also State v. Williams*, 2020 ME 128, ¶ 43, 241 A.3d 835, *amended*, 2020 Me. LEXIS 136.

The court must focus on "the totality of the State's actions in obtaining the confession." *Hunt*, 2016 ME 172, ¶ 21; *State v. McConkie*, 2000 ME 158, ¶¶ 4, 9,

7

755 A.2d 1075. A number of relevant factors may be considered by the court in making the voluntariness assessment, including:

> the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct.

*State v. George*, 2012 ME 64, ¶ 21, 52 A.3d 903.

It is the State's burden to demonstrate that a statement is voluntary beyond a reasonable doubt. *State v. Annis*, 2018 ME 15, ¶ 13, 178 A.3d 467. *State v. Collins*, 297 A.2d 620, 626-27 (Me. 1972).

As noted above, the court must assess the totality of the circumstances in order to make a judgment as to whether the State has proved the voluntariness of a defendant's confession beyond a reasonable doubt. No one factor, in isolation, necessarily controls that determination.

In evaluating Roscoe's claim that his admissions to both P.O. Barker and Det. Gorham were not voluntary, the court has also obtained guidance from the United States Supreme Court opinion in *Minnesota v. Murphy*, 465 U.S. 420 (1984) and the more recent decision from the First Circuit in *United States v. Rogers*, 988 F.3d 106 (1st Cir. 2021). Although these cases may not be directly on point for purposes of the due process analysis under *Hunt*, they are helpful because they both involved individuals who were on probation or supervised release and who sought to suppress statements made to their probation officers while they were required to participate in sex offender treatment and, in *Rogers*, participate in polygraph examinations just like Roscoe was required to do.

In *Murphy*, the defendant was on state probation, which included requirements that he participate in sex offender treatment, report as directed and be

8

truthful to his probation officer "in all matters." During the course of sex offender treatment, the defendant admitted to a rape and murder in 1974. This disclosure was conveyed to Murphy's probation officer, who directed Murphy to meet with her. At that meeting, Murphy again admitted to the rape and murder. He was later indicted for first degree murder and moved to suppress the statements he made to his probation officer.

The Minnesota Supreme Court held that, even though Murphy was not "in custody" for purpose of *Miranda v. Arizona*, 384 U.S. 436 (1966), he should have been warned of his privilege against self-incrimination "[b]ecause of the compulsory nature of the meeting, because [Murphy] was under court order to respond truthfully to his agent's questions, and because the agent had substantial reason to believe that [Murphy's] answers were likely to be incriminating." 465 U.S. at 425. The Supreme Court, applying Fifth Amendment jurisprudence, rejected these reasons and reversed.

As an initial matter, the Court reaffirmed longstanding law that the right to refuse to incriminate oneself is not self-executing, and must be invoked or it will be lost. Moreover, the Court rejected the notion that meetings with probation officers and answering their questions should be treated similarly to interrogations in police custody. Finally, the fact that the probation officer consciously sought to elicit incriminating evidence did not trigger the need for *Miranda*-like warnings in non-custodial settings. The Court also rejected the claim that Murphy was threatened with a "penalty" if he had invoked his Fifth Amendment privilege and refused to answer his probation officer's questions, since there was no evidence "that Murphy confessed because he feared that his probation would be revoked if he remained silent." *Id.* at 437.

In *Rogers*, the 1st Circuit considered a case that involved use of statements to a polygraph examiner and a probation officer that were used to support a revocation

9

of supervised release. In that case, the probationer was subject to one of the very same conditions of supervised release as was Mr. Roscoe, to wit, special condition # 2 that he "submit to periodic random polygraph examinations." This special condition also contained the disclaimer that is applicable to Mr. Roscoe, that "[n]o violation proceedings will arise solely on the defendant's failure to pass a polygraph examination, or on the defendant['s] refusal to answer polygraph questions on 5th amendment grounds," but such "an event could, however, generate a separate investigation."

Rogers was required to participate in a polygraph examination. During a pre-polygraph interview he admitted to using an unapproved device to view pornography on a regular basis for several months. This information was passed along to the probation officer by the polygraph examiner. In a later conversation, Rogers told the probation officer that he had used the same device to view pornography. The probation officer then initiated the process for filing a revocation petition. At the subsequent evidentiary hearing, the district court revoked Rogers's supervised release and relied, in part, upon Rogers's admissions to the polygraph examiner and the probation officer.

After reviewing the applicable law, including the principle that the right against self-incrimination must be invoked or it is lost, the First Circuit addressed the argument that requiring a probationer to undergo polygraph examinations is, in and of itself, a "form of compulsion so severe that it renders any statement made during such an exam involuntary . . . ." 988 F.3d at 112. The court rejected that argument as being without any support in the law.

Next, the court noted that the "penalty" exception to the requirement that the Fifth Amendment must be invoked, "only applies when the very ability to invoke the Fifth Amendment privilege is penalized." *Id.* at 113. The court observed that the condition to submit to polygraph examinations contains a qualifier, as Mr.

10

Roscoe's does, that a probationer could refuse to answer questions on 5th amendment grounds and such a refusal could not be the basis for violation proceedings.

In support of his motion to suppress, Roscoe advances a number of claims and arguments. First:

> There are two reasons why Mr. Roscoe identified McKenzie as "M" to P.O. Barker and Detective Gorham. First, if he did not answer P.O. Barker's question whether McKenzie was "M" Mr. Roscoe faced either a "special investigation" or a petition to revoke his supervised release for not answering his probation officer truthfully. Second, Mr. Roscoe was informed by P.O. Barker that it was necessary to be truthful and honest in his sex offender treatment in order to obtain the best result from the treatment.

*Defendant's Brief at* ¶ *82.*

This argument, however, is not supported by the record evidence. In the first place, there is no direct evidence as to why Mr. Roscoe responded to Officer Barker's question by confirming that victim "M" was, indeed, McKenzie. What is clear, however, is that at no time did Mr. Roscoe invoke his privilege against self-incrimination by refusing to answer the question. The fact that Mr. Roscoe may have faced a "special investigation" does not, in the court's view, render his statements involuntary. Nothing prevented the commencement of a "special investigation" by law enforcement if there was a basis for doing so. Moreover, there is no evidence to suggest that Officer Barker threatened Mr. Roscoe with the prospect of a "special investigation" if he refused to answer his questions. Indeed, there is no evidence to suggest that any threats of any kinds were made to Mr. Roscoe on June 25, 2018 or on January 5, 2019.

Furthermore, the contention that Mr. Roscoe faced the prospect of a petition to revoke his supervised release "for not answering probation officer truthfully," is not supported by the evidence. Indeed, it is contrary to the evidence. Officer Barker made it clear that Roscoe's obligation to answer questions truthfully as posed by

11

Barker did not extend to any question that could incriminate him and that he had a 5th amendment privilege to refuse to answer. Had Mr. Roscoe invoked his 5th amendment privilege and declined to answer Officer Barker's questions on June 25, 2018, his refusal to answer could not have been the basis for a revocation proceeding, as that would have amounted to the classic penalty for exercising his 5th amendment right. *Minnesota v. Murphy; United States v. Rogers; United States v. Hood,* 920 F.3d 87 (1st Cir. 2019).

The fact that Officer Barker encouraged Roscoe to be truthful and honest in his sex offender treatment in order to get the best result from the treatment, was not a form of compulsion and did not render Mr. Roscoe's admissions to Officer Barker or Det. Gorham involuntary.

Mr. Roscoe contends that he "had no choice but to disclose the identity of 'M' to P.O. Barker." *Def's Memorandum at ¶ 95.* But Mr. Roscoe did have a choice not to answer that question and any other question posed by Officer Barker, that he feared would incriminate him, by invoking his 5th amendment privilege. Roscoe appears to be suggesting that Officer Barker made some type of improper inducement to him when, as he testified, he told Roscoe at the May 23, 2018 intake. meeting that he "would not be asking him any questions that would entail him invoking his Fifth Amendment rights." *(April 1, 2021 Hearing Transcript at 12). Def's Memorandum at ¶¶ 90, 93.* The court rejects the notion that this testimony supports an argument that Officer Barker somehow promised Roscoe that he would not ask any questions of him that might tend to incriminate him. This testimony was given in the context of Officer Barker's explanation to Roscoe that his obligation to be truthful did not extend to anything that could be potentially incriminating, and that Roscoe did not have to admit to anything that was potentially incriminating, even if Barker directed him to answer. *(April 1, 2021 Hearing Transcript at 12, 54-55).*

12

The court finds beyond a reasonable doubt that Mr. Roscoe's statements to Officer Barker and to Det. Gorham were voluntary. In the court's view, the relevant factors, in the context of the totality of the circumstances whereby the government obtained the statements, support a finding of voluntariness beyond a reasonable doubt.

The duration of both interviews was very short – 15 to 30 minutes in Officer Barker's case and 20 minutes in Det. Gorham's. Officer Barker spoke to Mr. Roscoe on June 25, 2018 at Mr. Roscoe's apartment, while Det. Gorham spoke to him at the Cumberland County Jail. The "containment" interview by Officer Barker was clearly non-custodial. Roscoe was incarcerated while at the jail during Det. Gorham's interview, but she gave him full *Miranda* warnings and he freely signed a waiver and agreed to answer her questions. While Officer Barker did not advise Roscoe of his right to invoke his 5th amendment privilege during the brief containment meeting, he was under no legal obligation to do so and Mr. Roscoe had previously been informed of his Fifth Amendment rights by both Officer Barker and the polygraph examiner. In each case, only one officer was involved, and there was no police trickery,[2] threats, promises or inducements. Finally, Mr. Roscoe's age, physical and mental health, emotional stability and conduct are relevant considerations. There is no question that Roscoe was anxious and worried about going to jail, and this stemmed from his awareness that he had disclosed the fact that he had "hands-on" victims. Notwithstanding his valid concern about his exposure to further jail and/or prison time, Mr. Roscoe was lucid and coherent with both

---

[2] The only arguable evidence of police "trickery" was Det. Gorham's false statement to Mr. Roscoe that "M" had confirmed the sexual contact during her initial CAC interview. In viewing the interview in its entirety, however, the court is satisfied that that this untrue statement to Mr. Roscoe was not a motivating factor for him when he freely chose to speak to Det. Gorham. *State v. McNaughton*, 2017 ME 173, ¶¶ 36-37, 168 A.3d 807.

Barker and Gorham and neither officer attempted to take advantage of or play upon any emotional vulnerability on Mr. Roscoe's part.

The court is satisfied beyond a reasonable doubt that Mr. Roscoe's statements to both Officer Barker and to Det. Gorham were the product of his rational mind, were not the result of coercive police conduct and that their admission into evidence, under all the circumstances, would be fundamentally fair.

## CONCLUSION

The entry is:

Defendant's Motion to Suppress is DENIED.

Dated: July 23, 2021

William R. Stokes
Justice, Superior Court

14

STATE OF MAINE
vs
WILLIAM A ROSCOE, JR
1 RIVERSIDE ST ROOM 325
PORTLAND ME 04102

CRIMINAL DOCKET
CUMBERLAND, ss.
Docket No    CUMCD-CR-2019-01296

**DOCKET RECORD**

DOB: 09/12/1985

Attorney:    PETER CYR
               LAW OFFICES OF PETER J CYR
               85 BRACKETT STREET
Pro Se.      PORTLAND ME 04102
               APPOINTED 03/15/2019

State's Attorney:    JONATHAN SAHRBECK

Filing Document:    INDICTMENT
Filing Date:         03/07/2019

Major Case Type:  FELONY (CLASS A,B,C)

**Charge(s)**

1   GROSS SEXUAL ASSAULT                       01/01/2013     PORTLAND
Seq 10932        17-A  253(1)(C)      Class A
GORHAM                    /   POR
2   GROSS SEXUAL ASSAULT                       01/01/2013     PORTLAND
Seq 10932        17-A  253(1)(C)      Class A
GORHAM                    /   POR
3   GROSS SEXUAL ASSAULT                       01/01/2013     PORTLAND
Seq 10932        17-A  253(1)(C)      Class A
GORHAM                    /   POR
4   UNLAWFUL SEXUAL CONTACT              01/01/2013     PORTLAND
Seq 10933        17-A  255-A(1)(E-1)   Class B
GORHAM                    /   POR
5   UNLAWFUL SEXUAL CONTACT              01/01/2013     PORTLAND
Seq 10933        17-A  255-A(1)(E-1)   Class B
GORHAM                    /   POR
6   UNLAWFUL SEXUAL TOUCHING            01/01/2013     PORTLAND
Seq 9310         17-A  260(1)(C)      Class D
GORHAM                    /   POR

**Docket Events:**

03/11/2019  FILING DOCUMENT - INDICTMENT FILED ON 03/07/2019

03/11/2019  Charge(s):  1,2,3,4,5,6
           HEARING - ARRAIGNMENT SCHEDULE OTHER COURT ON 03/15/2019 at 01:00 p.m. in Room No. 1

           PORSC
03/11/2019  WRIT - HABEAS CORPUS TO PROSECUTE ISSUED ON 03/11/2019

           CERTIFIED COPY TO SHERIFF DEPT.
03/18/2019  Charge(s):  1,2,3,4,5,6
           HEARING - ARRAIGNMENT HELD ON 03/15/2019
           MARIA  WOODMAN , JUDGE
           DA: WILLIAM BARRY
           Defendant Present in Court
           DEFENDANT INFORMED OF CHARGES.          FTR1
03/18/2019  Charge(s):  1,2,3,4,5,6
           PLEA - NO ANSWER ENTERED BY DEFENDANT ON 03/15/2019

03/18/2019  BAIL BOND - $50,000.00 CASH BAIL BOND SET BY COURT ON 03/15/2019
           MARIA  WOODMAN , JUDGE
           NO THIRD PARTY
03/18/2019  MOTION - MOTION FOR APPOINTMENT OF CNSL MADE ORALLY BY DEF ON 03/15/2019

03/18/2019  MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 03/15/2019
    MARIA  WOODMAN , JUDGE
    COPY TO PARTIES/COUNSEL
03/18/2019  Party(s):    WILLIAM A ROSCOE JR
    ATTORNEY - APPOINTED ORDERED ON 03/15/2019


    Attorney:  PETER CYR
03/18/2019  HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 06/19/2019 at 08:30 a.m. in Room No. 7


03/18/2019  Charge(s):  1,2,3,4,5,6
    TRIAL - JURY TRIAL SCHEDULED FOR 08/12/2019 at 08:30 a.m. in Room No. 11


    NOTICE TO PARTIES/COUNSEL
03/22/2019  MOTION - MOTION TO AMEND BAIL FILED BY DEFENDANT ON 03/21/2019


03/22/2019  HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 03/26/2019 at 01:00 p.m. in Room No. 1


    NOTICE TO PARTIES/COUNSEL
03/22/2019  HEARING - MOTION TO AMEND BAIL NOTICE SENT ELECTRONICALLY ON 03/22/2019


03/22/2019  WRIT - HABEAS CORPUS TO PROSECUTE ISSUED ON 03/22/2019


    CERTIFIED COPY TO SHERIFF DEPT.                      FEDERAL CUSTODY
03/22/2019  WRIT - HABEAS CORPUS TO PROSECUTE ORDERED ON 03/22/2019
    PAUL A FRITZSCHE , JUSTICE
03/26/2019  HEARING - MOTION TO AMEND BAIL NOT HELD ON 03/26/2019


03/26/2019  MOTION - MOTION TO AMEND BAIL WITHDRAWN ON 03/26/2019


    Attorney:  JAMES GIOIA
04/08/2019  MOTION - MOTION FOR PROTECTIVE ORDER FILED BY STATE ON 04/08/2019


    UNOPPOSED.
04/09/2019  MOTION - MOTION FOR PROTECTIVE ORDER GRANTED ON 04/08/2019
    JED  FRENCH , JUDGE
    COPY TO PARTIES/COUNSEL
04/23/2019  MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 04/22/2019


06/19/2019  HEARING - DISPOSITIONAL CONFERENCE HELD ON 06/19/2019
    ROLAND A COLE , JUSTICE
    Attorney:  JAMES GIOIA
    DA:  GRANT WHELAN
    CASE UNRESOLVED. MOTIONS TO BE FILED. OFFER TO BE MADE BEFORE MOTIONS.
06/20/2019  MOTION - MOTION TO SUPPRESS STATEMENT FILED BY DEFENDANT ON 06/19/2019


06/20/2019  HEARING - MOTION TO SUPPRESS STATEMENT SCHEDULED FOR 07/02/2019 at 01:00 p.m. in Room No. 1


    NOTICE TO PARTIES/COUNSEL
06/24/2019  Charge(s):  1,2,3,4,5,6
    MOTION - MOTION TO CONTINUE FILED BY STATE ON 06/20/2019

UNOPPOSED
06/26/2019 Charge(s): 1,2,3,4,5,6
MOTION - MOTION TO CONTINUE GRANTED ON 06/24/2019
DEBORAH CASHMAN , JUDGE
COPY TO PARTIES/COUNSEL
06/26/2019 HEARING - MOTION TO SUPPRESS STATEMENT CONTINUED ON 06/24/2019
DEBORAH CASHMAN , JUDGE
06/26/2019 Charge(s): 1,2,3,4,5,6
HEARING - MOTION TO SUPPRESS SCHEDULED FOR 08/06/2019 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL
06/26/2019 Charge(s): 1,2,3,4,5,6
HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 06/26/2019

08/05/2019 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 08/05/2019

Attorney: PETER CYR
UNOPPOSED
08/06/2019 MOTION - MOTION TO CONTINUE GRANTED ON 08/06/2019
ANDREW HORTON , JUSTICE
COPY TO PARTIES/COUNSEL
08/06/2019 Charge(s): 1,2,3,4,5,6
HEARING - MOTION TO SUPPRESS CONTINUED ON 08/06/2019

08/06/2019 HEARING - MOTION TO SUPPRESS STATEMENT SCHEDULED FOR 01/14/2020 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL
08/06/2019 HEARING - MOTION TO SUPPRESS STATEMENT NOTICE SENT ELECTRONICALLY ON 08/06/2019

08/06/2019 Charge(s): 1,2,3,4,5,6
TRIAL - JURY TRIAL NOT HELD ON 08/06/2019

12/26/2019 MOTION - MOTION TO AMEND BAIL FILED BY DEFENDANT ON 12/23/2019

12/26/2019 HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 12/27/2019 at 08:30 a.m. in Room No. 7

NOTICE TO PARTIES/COUNSEL
12/26/2019 HEARING - MOTION TO AMEND BAIL NOTICE SENT ELECTRONICALLY ON 12/26/2019

12/27/2019 HEARING - MOTION TO AMEND BAIL NOT HELD ON 12/27/2019

12/27/2019 MOTION - MOTION TO AMEND BAIL WITHDRAWN ON 12/27/2019

01/13/2020 HEARING - MOTION TO SUPPRESS STATEMENT CONTINUED ON 01/13/2020
LINDA LASKO HALL , ASSISTANT CLERK
DA: JENNIFER ACKERMAN
DONE VERBALLY IN FTR1
01/13/2020 HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 01/28/2020 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL
01/14/2020 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 01/10/2020

MOTION HEARING 1-14-20. NO OBJECTION.

01/21/2020 MOTION - MOTION TO AMEND BAIL FILED BY DEFENDANT ON 01/17/2020

01/21/2020 HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 01/23/2020 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL

01/21/2020 HEARING - MOTION TO AMEND BAIL NOTICE SENT ELECTRONICALLY ON 01/21/2020

01/24/2020 MOTION - MOTION TO CONTINUE MOOT ON 01/23/2020

01/24/2020 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 01/28/2020 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL

01/24/2020 HEARING - MOTION TO AMEND BAIL NOT HELD ON 01/23/2020

01/24/2020 HEARING - MOTION TO AMEND BAIL HELD ON 01/23/2020 in Room No. 1

ANDREW HORTON , JUSTICE

Attorney: PETER CYR

DA: JENNIFER ACKERMAN

01/24/2020 MOTION - MOTION TO AMEND BAIL GRANTED ON 01/23/2020

ANDREW HORTON , JUSTICE

COPY TO PARTIES/COUNSEL

01/24/2020 BAIL BOND - $5,000.00 CASH BAIL BOND SET BY COURT ON 01/23/2020

ANDREW HORTON , JUSTICE

Attorney: PETER CYR

DA: JENNIFER ACKERMAN

W/MPTSC

01/24/2020 BAIL BOND - CASH BAIL BOND COMMITMENT ISSUED ON 01/23/2020

01/28/2020 HEARING - MOTION TO SUPPRESS HELD ON 01/28/2020

WILLIAM STOKES , JUSTICE

Attorney: PETER CYR

DA: JENNIFER ACKERMAN

Defendant Present in Court

FTR CR1. STATE CALLS US PROBATION OFFICER BARKER; STATE'S EXHIBIT #1 ADMITTED; REMAINDER OF HEARING CONTINUED. TO BE SET WITH J STOKES.

01/29/2020 CASE STATUS - CASE FILE LOCATION ON 01/29/2020

DANIELLE MERRILL , ASSISTANT CLERK

FILE WITH J STOKES                               OUT FOLDER WITH SARAH FENNESSEY

02/21/2020 Charge(s): 1,2,3,4,5,6

HEARING - MOTION TO SUPPRESS SCHEDULED FOR 03/13/2020 at 08:30 a.m. in Room No. 8

WILLIAM STOKES , JUSTICE

NOTICE TO PARTIES/COUNSEL

02/21/2020 Charge(s): 1,2,3,4,5,6

HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 02/21/2020

03/04/2020 Charge(s): 1,2,3,4,5,6

HEARING - MOTION TO SUPPRESS CONTINUED ON 03/03/2020

WILLIAM STOKES , JUSTICE

03/23/2020 MOTION - MOTION TO AMEND BAIL FILED BY DEFENDANT ON 03/18/2020

DA: SAMUEL JOHNSON

STATE OBJECTS

03/23/2020 HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 03/25/2020 at 08:30 a.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL

03/25/2020 HEARING - MOTION TO AMEND BAIL HELD ON 03/25/2020

MARYGAY KENNEDY , JUSTICE

DA: JENNIFER ACKERMAN

Defendant Present in Court

DEF PRESENT VIA POLYCOM

03/25/2020 MOTION - MOTION TO AMEND BAIL DENIED ON 03/25/2020

MARYGAY KENNEDY , JUSTICE

COPY TO PARTIES/COUNSEL

03/27/2020 MOTION - MOTION TO PREPARE TRANSCRIPT FILED BY DEFENDANT ON 03/25/2020

Attorney: PETER CYR

AT STATE'S EXPENSE

03/27/2020 ORDER - TRANSCRIPT ORDER FILED ON 03/25/2020

Attorney: PETER CYR

03/27/2020 MOTION - MOTION TO PREPARE TRANSCRIPT GRANTED ON 03/27/2020

MARYGAY KENNEDY , JUSTICE

COPY TO PARTIES/COUNSEL

03/31/2020 NOTE - OTHER CASE NOTE ENTERED ON 03/31/2020

TRANSCRIPT AND AUDIO ORDER FORM RECVD 3/27/20. REQUEST FOR PAPER TRANSCRIPT OF MOTION TO SUPPRESS HEARING HELD ON 1/28/20 IN CR#1 AND RECORDED VIA FTR (2:21:00P-3:31:21P AND 3:50:44P-4:22:42P), REQUEST COMPLETED AND FORWARDED TO OTO FOR FURTHER PROCESSING ON THIS DATE.

04/23/2020 OTHER FILING - TRANSCRIPT FILED ON 04/23/2020

06/19/2020 Charge(s): 1,2,3,4,5,6

HEARING - MOTION TO SUPPRESS SCHEDULE OTHER COURT ON 07/06/2020 at 09:00 a.m. in Room No. 8

PORSC

06/19/2020 Charge(s): 1,2,3,4,5,6

HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 06/19/2020

JIM PAUL TURCOTTE , ASSISTANT CLERK

07/06/2020 Charge(s): 1,2,3,4,5,6

HEARING - MOTION TO SUPPRESS CONTINUED ON 07/06/2020 in Room No. 9

WILLIAM STOKES , JUSTICE

Attorney: PETER CYR

DA: JENNIFER ACKERMAN Reporter: TIMOTHY THOMPSON

Defendant Present in Court

01/04/2021 HEARING - CONFERENCE SCHEDULE OTHER COURT ON 01/07/2021 at 01:00 p.m.

WILLIAM STOKES , JUSTICE

PORSC                                   CONFERENCE OF COUNSEL RE: SCHEDULING

01/04/2021 HEARING - CONFERENCE NOTICE SENT ELECTRONICALLY ON 01/04/2021

01/07/2021 HEARING - CONFERENCE HELD ON 01/07/2021 at 01:00 p.m.

WILLIAM STOKES , JUSTICE

Attorney: CAROL SIPPERLY

DA: JENNIFER ACKERMAN

TELEPHONIC CONFERENCE. STATE TO DETERMINE WHEN WITNESS WILL BECOME AVAILABLE AGAIN IN LATE MARCH AND NOTIFY COURT. HEARING TO BE HELD VIA ZOOM IMMEDIATELY THEREAFTER (UNLESS IN-PERSON HEARINGS ARE ALLOWED AGAIN).

01/07/2021 ORDER - COURT ORDER FILED ON 01/07/2021

WILLIAM STOKES , JUSTICE

PROCEDURAL ORDER: THE COURT WILL WORK WITH THE UCD CLERK AND THE PARTIES TO FIND A DAY IN EARLY APRIL TO CONCLUDE THE HEARING ON THE MOTION. ATTY CYR IS DIRECTED TO CONSULT WITH HIS CLIENT AND BRIEF HIM ON THE SUBSTANCE OF THE STATUS CONFERENCE AS EMBODIED IN THIS PROCEDURAL ORDER.

01/29/2021 HEARING - MOTION TO SUPPRESS SCHEDULE OTHER COURT ON 04/01/2021 at 08:30 a.m. in Room No. 9

WILLIAM STOKES , JUSTICE

PORSC

01/29/2021 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 01/29/2021

JIM PAUL TURCOTTE , ASSISTANT CLERK

04/01/2021 HEARING - MOTION TO SUPPRESS HELD ON 04/01/2021

WILLIAM STOKES , JUSTICE

Attorney: PETER CYR

DA: JENNIFER ACKERMAN

DAY 2 OF TESTIMONY. TESTIMONY OF OFFICE MICHAEL BARKER COMPLETED, WITNESS EXCUSED. STATE CALLS DETECTIVE KELLY GORHAM. STATE'S EXHIBIT 2&3 OFFERED AND ADMITTED WITHOUT OBJECTION.

04/01/2021 MOTION - MOTION TO SUPPRESS STATEMENT UNDER ADVISEMENT ON 04/01/2021

WILLIAM STOKES , JUSTICE

DEFENSE BRIEF DUE 4/30/2021. STATE'S BRIEF DUE 5/14/2021. DEFENSE RESPONSE DUE BY 5/28/2021.

04/08/2021 Charge(s): 1,2,3,4,5,6

MOTION - MOTION TO PREPARE TRANSCRIPT FILED BY DEFENDANT ON 04/07/2021


Attorney: PETER CYR

AT STATE'S EXPENSE W/TRANSCRIPT AUDIO ORDER FORM

04/09/2021 Charge(s): 1,2,3,4,5,6

MOTION - MOTION TO PREPARE TRANSCRIPT GRANTED ON 04/08/2021

HAROLD STEWART , JUSTICE

COPY TO PARTIES/COUNSEL

04/12/2021 NOTE - OTHER CASE NOTE ENTERED ON 04/12/2021


TRANSCRIPT ORDER RECVD 4/9/21. REQUEST FOR PAPER TRANSCRIPT OF A MOTION TO SUPPRESS HEARING HELD ON 4/1/21 IN CR#9 VIA ZOOM AND RECORDED VIA FTR (8:59:31A-12:17:50P), REQUEST COMPLETED AND FORWARDED TO OTO FOR FURTHER PROCESSING ON THIS DATE.

04/27/2021 OTHER FILING - TRANSCRIPT FILED ON 04/26/2021


TRANSCRIPT MAILED TO JUSTICE STOKES @ CJC ON 5-28-2021

04/27/2021 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 04/23/2021


Attorney: PETER CYR

NO OBJECTION BY STATE

04/27/2021 MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 04/27/2021

WILLIAM STOKES , JUSTICE

COPY TO PARTIES/COUNSEL                                          DEADLINE EXTENDED TO MAY 7

05/11/2021 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 05/10/2021


DEFENDANTS 2ND UNOPPOSED MOTION TO ENLARGE TIME

05/18/2021 BRIEF - PETITIONERS BRIEF FILED ON 05/18/2021

Attorney: PETER CYR
BRIEF IN SUPPORT OF MOTION TO SUPPRESS
05/18/2021 OTHER FILING - OTHER DOCUMENT FILED ON 05/18/2021

Attorney: PETER CYR
05/18/2021 MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 05/12/2021
WILLIAM STOKES , JUSTICE
COPY TO PARTIES/COUNSEL
05/28/2021 MOTION - OTHER MOTION FILED BY STATE ON 05/26/2021

DA: JENNIFER ACKERMAN
MOTION TO EXTEND DEADLINE
05/28/2021 MOTION - OTHER MOTION GRANTED ON 05/27/2021
WILLIAM STOKES , JUSTICE
MOTION TO EXTEND DEADLINE
06/15/2021 OTHER FILING - MEMORANDUM OF LAW FILED ON 06/11/2021

Attorney: JENNIFER ACKERMAN
07/27/2021 ORDER - COURT ORDER FILED ON 07/27/2021
WILLIAM STOKES , JUSTICE
ORDER ON MOTION TO SUPPRESS
07/27/2021 ORDER - COURT ORDER ENTERED ON 07/27/2021

07/27/2021 MOTION - MOTION TO SUPPRESS STATEMENT DENIED ON 07/27/2021
WILLIAM STOKES , JUSTICE
COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST: